## 19198

William Barto SENN, Respondent, v. J. S. WEEKS AND
COMPANY, Appellant

(180 S. E. (2d) 336)

*Messrs. Young, Clement* and *Rivers* of Charleston, *for the Appellant,*

*Messrs. Way, Burkett & Wise,* of Charleston, *for Respondent,*

*Messrs. Young, Clement & Rivers,* of Charleston, *for Appellant,*

April 7, 1971.

Lewis, Justice:

This action arose out of an automobile collision and resulted in a judgment in plaintiff's favor in the amount of $5,000.00 actual damages and $2,500.00 punitive damages. Defendant has appealed, charging error in the refusal by the lower court of his timely motions for a directed

verdict, judgment notwithstanding the verdict, and for a new trial.

Plaintiff was injured when his automobile was struck by a vehicle driven by one Jean Defee Powell, as plaintiff was proceeding through the intersection of President and Congress Streets, in the City of Charleston, South Carolina. President was a through street and traffic was required to stop before entering it from Congress in obedience to a posted stop sign. Plaintiff's automobile was struck when the Powell vehicle, travelling east on Congress, entered the intersection without stopping.

Powell was an uninsured motorist and plaintiff's liability insurance carrier paid to plaintiff the sum of $5,000.00 under the uninsured motorist provisions of his policy, taking from plaintiff a Trust Agreement for the payment.

Thereafter this action was brought against the defendant. The asserted liability of defendant was based upon allegations that, at the time of the above collision, a pickup truck, owned by defendant, was illegally parked by its agent in a "no parking" zone at the intersection, so as to obscure the stop sign from the view of motorists entering President from Congress Street, causing Powell to fail to see and obey the stop sign and to collide with plaintiff's automobile then in progress through the intersection.

The answer of the defendant, after denying the material allegations of the complaint, alleged (1) that any injuries suffered by plaintiff were due to the negligence and recklessness of Powell whose vehicle actually struck the plaintiff and (2) that plaintiff, in consideration of the payment received by him under the uninsured motorist provisions of his policy, had executed a release or covenant not to sue and defendant was entitled to have said amount deducted from any judgment rendered against it.

The first question to be decided is whether there was any evidence of actionable negligence or recklessness on the part of defendant. Defendant takes the position that the trial

judge should have entered judgment in its favor "upon the grounds that the only reasonable inferences to be drawn from the testimony were that the stop sign in question was not blocked from the view of Mrs. Powell and that any possible negligence on the part of the agent of the defendant was not the proximate cause of the injury to the plaintiff."

A detailed review of the testimony of the various witnesses would serve no useful purpose. We find evidence from which the reasonable inferences may be drawn that defendant's pickup truck was illegally parked near the intersection of President and Congress Streets, at an angle, in a "no parking" zone, and partially blocking traffic, so as to obscure the stop sign from the view of Mrs. Powell who was unfamiliar with the intersection; and that such deprived her of the benefit of the stop sign warning, thereby causing her to proceed into the intersection without stopping and collide with plaintiff's automobile. Under these facts and inferences, the trial judge properly held that the evidence presented a jury issue as to the actionable negligence and recklessness of defendant.

Defendant also charges that the trial judge committed error in refusing to admit certain pictures in evidence.

As heretofore stated, the basis of plaintiff's action was the allegation that defendant's truck was improperly parked in such a position as to obscure the stop sign from view. During the trial, defendant's counsel, after the witnesses had testified as to the respective heights and location of the truck and stop sign, made pictures of the stop sign with the truck parked in substantially the same position as that testified to by the witnesses. The pictures were made so as to show the view of the stop sign from the direction in which plaintiff was travelling. There was testimony that the truck and the stop sign were in the same condition as when the collision took place. When the pictures were offered in evidence by the defendant, the trial judge ruled them inadmissible. He was in error in doing so.

The pictures were offered to show the view that a motorist would have of the stop sign on approaching the intersection, with the claimed obstruction in substantially the same position as the witnesses located it at the time of the collision. The similarity to the accident conditions made the pictures competent and they were relevant to the one basic and vital issue in the case. The crucial nature of the evidence made its exclusion prejudicial. Its exclusion constituted an abuse of discretion and warrants the granting of a new trial on that ground.

Since it will be involved in a retrial of the case, one further question must be decided. This involves the effect of the settlement by plaintiff of his insurance carrier's liability under the uninsured motorist provisions of his insurance policy.

Plaintiff's damages were sustained when his automobile was struck by the Powell vehicle. In this action, plaintiff contends that his damages were caused by the negligent act of defendant in so obscuring Mrs. Powell's view of the stop sign as to cause her to fail to see and obey it. For the purposes of this decision, we proceed upon the assumption that Mrs. Powell and the defendant were joint *tort feasors*.

Mrs. Powell was an uninsured motorist. Plaintiff had in effect a liability insurance policy which contained an uninsured motorist endorsement as required by Section 46-750.33, Supplement to the 1962 Code of Laws. Upon receiving notice of the accident and that the Powell vehicle was uninsured, plaintiff's insurer paid to him the sum of $5,000.00 in settlement of its obligation under the uninsured motorist provisions of the policy.

In consideration of the foregoing payment, plaintiff executed an instrument, designated as a Trust Agreement, under the terms of which he agreed that he would never make any demand or prosecute any cause of action against his insurer because of any damages resulting from the accident in question. Plaintiff however reserved the right to prosecute an action against any other person for damages

arising out of the accident, but agreed that the insurance company would be entitled to the proceeds of any such recovery to the extent of the payment of $5,000.00 made by it.

Defendant took the position at the trial that the settlement by plaintiff with his insurance carrier of the latter's liability under the uninsured motorist provisions of the policy should be construed either (1) as a settlement and release of one joint *tort-feasor,* thereby releasing defendant from liability, or (2) a covenant not to sue, entitling defendant to credit on the present judgment for the amount paid to plaintiff under the foregoing settlement. The lower court overruled these contentions and, in effect, held that the settlement by plaintiff with his insured could not inure to the benefit of defendant and that defendant was liable for the full amount of recovery in this case.

The requirement that policies of automobile liability insurance provide uninsured motorist coverage is statutory and the effect of the settlement of such liability by plaintiff with his insurer is controlled by the provisions of the statutes.

Section 46-750.33, *supra,* requires that every insurance policy issued pursuant to the South Carolina Motor Vehicle Responsibility Act shall contain an uninsured motorist provision undertaking to pay the insured, within prescribed limits, all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.

When an insurance company pays a claim under the uninsured motorist provisions of its policy, it becomes subrogated to that extent to the rights of its insured. The extent of these subrogation rights is set forth in Section 46-750.36 as follows:

"An insurance carrier paying a claim under the uninsured motorist provision required by Section 46-750.33 shall be *subrogated to the rights of the insured* to whom such claim was paid *against any and every person causing such injury,*

*death or damage to the extent that payment was made;* * * *" (Emphasis added).

In construing the uninsured motorist law, we have held that its purpose is not to provide coverage upon an uninsured vehicle to the public, but its object is to afford additional protection to an insured motorist. The uninsured motorist provision does not insure the uninsured motorist. It is a contractual liability required by statute between the insured motorist and his carrier and inures solely to the benefit of the insured. *Laird v. Nationwide Insurance Co.,* 243 S. C. 388, 134 S. E. (2d) 206.

Upon the settlement of its liability, plaintiff's insurer became subrogated, under the quoted provisions of Section 46-750.36, to the rights of plaintiff against any and every person causing such injury or damage to the extent that payment was made. The statute does not limit subrogation solely to plaintiff's rights against the uninsured motorist, but it extends to *any and every person causing such injury or damage.* Since defendant's conduct, along with that of the uninsured motorist, allegedly caused plaintiff's damages, plaintiff's carrier was also subrogated to plaintiff's rights against defendant to the extent of the payment made.

The instrument executed by plaintiff in settlement of the liability of his insurer was not a release of a joint *tort-feasor,* as claimed by defendant. The uninsured motorist, the alleged joint *tort-feasor,* was not a party to the agreement and had no interest in the settlement. She has not been released from any liability which she may have for plaintiff's damages, and the instrument does not purport to do so. As previously mentioned, the only effect of the instrument was to settle the liability of plaintiff's insurer and to recognize the insurer's statutory right of subrogation against any person who might have caused the damage.

For the same reasons, the instrument executed by plaintiff could not have the effect of a covenant not to sue a joint

*tort-feasor.* Only the right of plaintiff to sue his insurer has been affected.

The settlement of plaintiff's claim against his insurance carrier under the uninsured motorist provisions of the policy and the execution of the Trust Agreement in question was in accordance with the terms of the uninsured motorist law and in furtherance of the public policy sought to be fostered by its enactment. Plaintiff's carrier will simply be entitled to reimbursement for its payment out of any judgment recovered by plaintiff against the defendant. The trial judge properly held that the subrogation rights of plaintiff's insurer were irrelevant to a determination of the liability of defendant.

The judgment of the lower court is accordingly reversed and the cause remanded for a new trial.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.