523 So.2d 339 (1988)
Mark J. COOPER, non compos mentis, who sues By and Through his father and next friend, William V. COOPER
v.
Vester APLIN, et al.
86-1100.
Supreme Court of Alabama.
February 26, 1988.
Rehearing Denied April 15, 1988.
Jim L. DeBardelaben of McPhillips, DeBardelaben & Hawthorne, Montgomery, and Joe W. Adams, Ozark, for appellant.
M. Ashley McKathan of Powell, Powell & McKathan, and Vreeland G. Johnson, Andalusia, for appellees.
PER CURIAM.
The Issue: Whether the plaintiff, who has recovered and obtained satisfaction of a judgment against his insurer for less than the policy limits under the uninsured motorist provisions of an insurance policy, is foreclosed from suing several alleged joint tort-feasors, one of whom was the uninsured motorist referenced in the former suit.
The Facts: Mark Cooper, through his father William Cooper, as next friend ("plaintiff"), sued Vester Aplin (the uninsured motorist), Sam Cooper, Glendora Cooper, and Scott Cooper ("defendants"), alleging negligence on their part. Each defendant filed a motion for summary judgment, alleging that the accident made *340 the basis of the suit had been litigated in a previous case. After a hearing, the trial court granted the motion and entered a judgment in favor of the defendants. The plaintiff appeals.
Following a motor vehicle accident in 1974, Mark Cooper filed suit through his next friend, his mother, against State Farm Mutual Automobile Insurance Company ("State Farm"), under two of his father's uninsured motorist insurance coverages. In his complaint, he alleged, in part, the following:
"1. On the 16th day of September, 1974, the plaintiff was riding a motorcycle on the public highway, county road 7 in Covington County, Alabama, and was involved in a collision with a vehicle negligently driven by one Vester Aplin. Mr. Aplin had no insurance on his vehicle.
"2. William V. Cooper, father of the plaintiff, had an insurance policy no. 2187 304 01B, with the defendant company which was in effect at the time of the accident described in paragraph 1. One of the provisions contained in the policy was what is commonly referred to as uninsured motorist coverage. The policy covered the plaintiff. Under the terms of the uninsured motorist provision, the defendant company agreed to pay all sums which the plaintiff would be legally entitled to recover as damages from an owner or operator of an uninsured motor vehicle.
"3. As a result of the negligence of Vester Aplin, described in paragraph 1 above, the plaintiff, Mark Cooper, was caused to suffer the following injuries...."
State Farm answered the complaint by specifically controverting the negligence of Aplin. The court heard the evidence and entered the following judgment:
"The plaintiff, with the consent of the defendant, withdraws his demand for trial by jury; and the parties agree for the court to hear the evidence and determine the cause. The court hears the evidence, finds for the plaintiff and assesses his damages at $1,500.00."
No appeal was taken from this order; and the record reflects that the judgment as entered was fully paid and satisfied.
More than ten years later, the plaintiff filed the instant action, based on the facts of the 1974 accident. The plaintiff, in this action, did not seek to reopen, vacate, set aside, or annul the prior litigation with State Farm, but seeks to recover against the alleged joint tort-feasors.
The Decision: We note at the outset that the plaintiff has devoted his entire brief to the proposition that the doctrines of res judicata and collateral estoppel are not applicable to the facts of this case, the parties in the two subject suits not being the same. While we agree with this abstract proposition and with each of the cited authorities, the trial court's order granting summary judgment is properly based on an entirely different and well-established legal doctrine:
"It is well settled in Alabama that while a party is entitled to full compensation for his injuries, there can be only one satisfaction therefor. Williams v. Colquett, 272 Ala. 577, 133 So.2d 364 (1961). If a plaintiff recovers judgment against one joint tortfeasor and obtains satisfaction of that judgment, this operates as a discharge of the other joint tortfeasor. Id.; Huey v. Dykes, 203 Ala. 231, 82 So. 481 (1919)."
Maddox v. Druid City Hospital Board, 357 So.2d 974, 975 (Ala.1978).
The plaintiff's 1975 judgment having been satisfied, the defendants, as purported tort-feasors jointly with Vester Aplin, are discharged. See Chambers County Commissioners v. Walker, 459 So.2d 861 (Ala.1984).
The plaintiff argues that the Maddox rule has no application because neither Vester Aplin (the uninsured motorist) nor any of the Coopers was a party to the original suit. This argument ignores the fact that the 1975 contract action on the uninsured motorist provision was based on the negligence of Vester Aplin. As stated in State Farm Mutual Automobile Insurance Co. v. Griffin, 51 Ala.App. 426, 431, 286 So.2d 302, 306 (1973):

*341 "In a direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability. Note that the insurer would have available, in addition to policy defenses, the substantive defenses that would have been available to the uninsured motorist." (Emphasis supplied.)
Likewise, as observed in Olive v. State Farm Mutual Insurance Co., 456 So.2d 310, 312 (Ala.Civ.App.1984):
"No matter how it is turned, when the insurance company is sued upon its policy[,] which provides that it does not pay unless the uninsured motorist is liable to plaintiff, the responsibility of the uninsured must be established."
Thus, the 1975 suit was based on Aplin's negligence, and the plaintiff has been paid the damages adjudicated to have arisen from that negligence.
In so holding, we are not to be understood as saying that the payment by an insurer of uninsured motorist benefits, either by way of settlement or judgment, necessarily precludes, in every situation, a subsequent claim against the tort-feasor for the same injury. Whether the payment of the policy's maximum coverage, but less than the full damages, bars a further claim against the tort-feasor is a question not here presented, and each such case will be considered and determined on its own facts. See Van Dyne v. McCarty, 166 Cal.App.3d 817, 212 Cal.Rptr. 571 (1985); Thompson v. Milam, 115 Ga.App. 396, 154 S.E.2d 721 (1967); Peoples Bank of La Grange v. Georgia Bank & Trust Co., 126 Ga.App. 768, 191 S.E.2d 876 (1972); Senn v. J.S. Weeks & Co., 255 S.C. 585, 180 S.E.2d 336 (1971). See, also, Batchelor v. Brye, 421 So.2d 1267 (Ala.Civ.App.1982).
AFFIRMED.
JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., and MADDOX and BEATTY, JJ., dissent.
MADDOX, Justice (dissenting).
I agree that the majority has correctly stated the primary issue in this case,[1] as follows: "Whether the plaintiff, who has recovered and obtained satisfaction of a judgment against his insurer for less than the policy limits under the uninsured motorist provisions of an insurance policy, is foreclosed from suing several alleged joint tort-feasors, one of whom was the uninsured motorist referenced in the former suit."
The majority answers that question in the affirmative. I would answer it in the negative, because of the following reasons: 1) the provisions of Alabama's uninsured motorist statute are not for the benefit of the uninsured driver, 2) the insurer does not stand in the shoes of the tort-feasor, 3) the judgment in the contract action settled only the liability of the plaintiff's insurer, 4) the uninsured motorist, an alleged tortfeasor, was not a party to the action in which the judgment was obtained, and 5) the alleged tort-feasor here should not be allowed to diminish the amount of his liability by pleading payments made to the plaintiff under the terms of a contract between the plaintiff and a third party who was not a joint tort-feasorto allow him to do so would allow the uninsured tort-feasor to benefit from the plaintiff's prudence in having insurance.[2]
Other jurisdictions have considered a similar factual setting involving the effect of a settlement by an insured with his insurer on the maintainability of a negligence claim against the uninsured tort-feasor, *342 and have reached the same result that I would reach in this case.
In Van Dyne v. McCarty, 166 Cal.App. 3d 817, 212 Cal.Rptr. 571 (1985), the plaintiff, Van Dyne, suffered a knee injury in a pedestrian-automobile accident. Dunn, McCarty, and McDonald were named in plaintiff's complaint as defendants. A default judgment was taken against McDonald, and the jury returned a verdict in favor of plaintiff against Dunn and McCarty for $50,000. Upon the request of the defendants, the judgment was reduced by $15,000, the amount the plaintiff had received prior to trial from her uninsured motorist insurance policy. Dunn appealed from the judgment finding him negligent, and plaintiff cross-appealed from the order reducing her damages award by the amount she had received from her uninsured motorist coverage.
The Court agreed with the plaintiff, and stated:
"The `collateral source' rule is an exception to the general rule of mitigation of damages. Where a plaintiff receives compensation from a source wholly independent of the tortfeasor, his or her recovery is not reduced. (Anheuser-Busch, Inc. v. Starley (1946) 28 Cal.2d 347, 349, 170 P.2d 448.) That is precisely what occurred here. Uninsured motorist coverage is intended to protect persons lawfully using the highways who are injured through no fault of their own by an uninsured driver. (Fireman's Fund etc. Co. v. Ind. Acc. Comm. (1964) 226 Cal. App.2d 676, 677-678, 38 Cal.Rptr. 336) The provisions of Insurance Code section 11580.2 are not for the benefit of the uninsured driver; the insurer does not stand in the shoes of the tortfeasor. (Ibid.; Johnson v. Oliver (1968) 266 Cal. App.2d 178, 181, 72 Cal.Rptr. 137.) By reducing plaintiff's judgment, the trial court has allowed defendants to benefit from plaintiff's prudence in having insurance, a result the collateral source rule was designed to prevent. (Helfend v. Southern Cal. Rapid Transit Dist. (1970) 2 Cal.3d. 1, 9-10, 84 Cal.Rptr. 173, 465 P.2d 61.) The payment made to plaintiff by CSAA is directly traceable to the acts of defendants (cf. Waite v. Godfrey, [(1980)] supra, 106 Cal.App.3d [760] at pp. 771-772, 163 Cal.Rptr. 881), and stems from a source wholly independent from them."
In Thompson v. Milam, 115 Ga.App. 396, 154 S.E.2d 721 (1967), plaintiff Milam brought suit for personal injuries against Thompson and alleged that she sustained injuries as a result of being struck by an automobile driven by the defendant. The plaintiff had an insurance policy with Allstate Insurance Company that contained an uninsured motorist clause that obligated Allstate to pay to her all sums she would be legally entitled to recover as damages against the owner or operator of an uninsured motor vehicle. Allstate paid the plaintiff $3,500 under this clause and, in consideration of the payment, the plaintiff executed a release discharging Allstate from any further liability under the policy. The defendant filed a motion for summary judgment, contending that in executing the release to Allstate the plaintiff made a complete surrender of her cause of action. The trial court denied the defendant's motion for summary judgment.
The Court of Appeals affirmed, and stated:

"A tortfeasor can not diminish the amount of his liability by pleading payments made to the plaintiff under the terms of a contract between the plaintiff and a third party who was not a joint tortfeasor. We find no Georgia decision as to whether the insured, after having settled with his insurance company under the uninsured motorist clause, can bring an action against the uninsured defendant. However, the Supreme Court in an analogous situation held: `The amount of damages to which a widow is entitled from a railroad company for the homicide of her husband shall not be reduced by any insurance on his life received by her.' Western & Atlantic Railroad v. Meigs, 74 Ga. 857(5). See City of Rome v. Rhodes, 134 Ga. 650(1), 68 S.E. 330; Barrett v. Western & Atlantic R. Co., 144 Ga. 47(1), 85 S.E. 1016. This Court has also decided that the fact *343 that an employee had received workmen's compensation benefits would not preclude him from bringing an action against the third party tortfeasor. Echols v. Chattooga Mercantile Co., 74 Ga.App. 18(3b), 38 S.E.2d 675. Hence, the fact that an insured, for a stated consideration, executes to his insurance carrier a release of liability for bodily injury under the terms of the uninsured motorist provision of his policy does not preclude him from maintaining an action against the party negligently causing his injuries." (Emphasis added).
115 Ga.App. at 397-98, 154 S.E.2d at 722-23. See also Peoples Bank of LaGrange v. Georgia Bank & Trust Co., 126 Ga.App. 768, 191 S.E.2d 876 (1972).
The Supreme Court of South Carolina has also addressed this issue in Senn v. J.S. Weeks & Co., 255 S.C. 585, 180 S.E.2d 336 (1971). The South Carolina court stated:
"The instrument executed by plaintiff in settlement of the liability of his insurer was not a release of a joint tortfeasor, as claimed by defendant. The uninsured motorist, the alleged joint tortfeasor, was not a party to the agreement and had no interest in the settlement. She has not been released from any liability which she may have for plaintiff's damages, and the instrument does not purport to do so. As previously mentioned, the only effect of the instrument was to settle the liability of plaintiff's insurer and to recognize the insurer's statutory right of subrogation against any person who might have caused the damage.

"For the same reasons, the instrument executed by plaintiff could not have the effect of a covenant not to sue a joint tortfeasor. Only the right of plaintiff to sue his insurer has been affected." (Emphasis added).
255 S.C. at 593-94, 180 S.E.2d at 339.
I believe this Court should hold that the plaintiff, even though he had to prove the negligence of the uninsured motorist in order to recover under the provisions of the insurance policies owned by his father, was not barred from suing the actual tort-feasors. I believe the law should be that the recovery by the plaintiff under the provisions of the insurance policies was not a release of the tort-feasors, as they contend and as the trial court held.
In my opinion, the only effect of the judgment entered in plaintiff's favor in the suit against the insurer was to settle the liability of the insurer. The uninsured motorist was not a party to the insurance contract and had no interest in the judgment. I would hold that the joint tortfeasors could not diminish the amount of their liability to the plaintiff by pleading the judgment entered in plaintiff's favor pursuant to the terms of the uninsured motorist provision of his father's insurance policies.
I believe that the majority mistakenly relies upon Maddox v. Druid City Hospital Board, 357 So.2d 974 (Ala.1978), to support its judgment. The principle stated in that case, that "[i]f a plaintiff recovers judgment against one joint tortfeasor and obtains satisfaction of that judgment, this operates as a discharge of the other joint tortfeasor" (emphasis added), can have no application here, because the judgment against the insurer in the earlier action settled only the liability of the insurer to the insured. The insurer was not a "joint tortfeasor" in this case. Admittedly, the insurer was subrogated to the rights of the plaintiff and could recover over against the tort-feasor the amount it was required to pay, but is the judgment entered in that contract action between the insured and the insurer binding on the tort-feasor? Stated differently, could the insurer recover the amount of its subrogated claim against the tort-feasor by merely filing a claim and proving the judgment? Obviously not. If the tort-feasor contested the amount of the insurer's claim, would not the insurer have to prove the tort-feasor's negligence?
I do not disagree with the majority's holding that the insured in this case had to prove the tort-feasor's negligence before the insurer was legally obligated to pay under the policy, but that fact, in my opinion, has no application here. The tort-feasor was not a party to that lawsuit. In its opinion, the majority seems to say that had the plaintiff suffered damages in excess of *344 the policy limits of its uninsured motorist policy, then a claim against the tort-feasor might lie. If the majority is suggesting that the plaintiff could have established the amount of his damages to be greater than the policy limits in the claim on the contract, then I believe the majority errs, because the plaintiff, on the contract claim, would be entitled only to his contract damages, which are set by the terms of the policy, no matter how large his actual damages were.
The principle of law that I would establish is not in conflict with a case decided by the Court of Civil Appeals, Batchelor v. Brye, 421 So.2d 1267 (Ala.Civ.App.1982). I think the facts of that case are materially different from the facts here because, as I understand the facts of that case, the liability of both tort-feasors had been judicially established. Here, the tort-feasor's liability, even though proven to recover under the contract claim, was not established against the tort-feasor himself. That makes a difference to me. In Batchelor, the father of a son killed in an automobile accident brought an action against his uninsured motorist carrier and two joint tortfeasors, one insured and the other not. The plaintiff and the carrier settled the claim brought against the carrier under the uninsured motorist provisions of the policy for $10,000. The plaintiff proceeded to trial against the tort-feasors. The insured defendant alleged as a defense a pro tanto settlement between the plaintiff and his uninsured motorist carrier, but the plaintiff's motion to strike this defense was granted. The jury returned a verdict against the two tort-feasors, and assessed plaintiff's damages at $30,000. The insured defendant paid $20,000 into Court and then moved to have the $30,000 judgment satisfied. The trial court granted the motion, and the plaintiff appealed. The Court of Civil Appeals affirmed, using much of the same reasoning used by the majority here. Even assuming that Batchelor is correct in its application of the law, I think it is distinguishable.
As the Court of Civil Appeals pointed out in that case, the liability of the defendants had been judicially established in an action against both joint tort-feasors. Here, the alleged tort-feasor had not been previously sued, and I think that makes Batchelor distinguishable.
Nevertheless, Batchelor troubles me, as this case does, because of the holding in both that a payment made by a carrier pursuant to the provisions of an uninsured motorist policy can be used to diminish or satisfy the liability of an uninsured tortfeasor. The holding by the majority here troubles me more than Batchelor, however, because in Batchelor, the total liability of the joint tort-feasors was at least established in an action brought by the plaintiffs against them. Here, the plaintiff is foreclosed from suing the uninsured motorist because the plaintiff, in his contract action against his insurer, proved the extent of his damages and received a satisfaction of these contract damages when his insurer paid that judgment in the contract action. Even Batchelor, with which I have problems, does not hold that an uninsured motorist carrier could not seek reimbursement against the uninsured tort-feasor.
I think that the effect of this opinion is to allow an uninsured tort-feasor to benefit from a plaintiff's prudence in having uninsured motorist insurance. I would not permit that. I would reverse the judgment and remand the case.
For the above reasons, I must respectfully dissent.
NOTES
[1] The majority, having decided the case on this issue, necessarily does not discuss other issues presented on the appeal, such as the question whether plaintiff's claim was barred by the running of the statute of limitations. I have reviewed those questions also and I am of the opinion that plaintiff's claim was not timebarred, because he is admittedly an incompetent.
[2] I do not purport to address the concept of the so-called "collateral source" rule, a part of the so-called tort reform package passed during the last regular session of the legislature.