**Ann M. BARTLEY a/k/a Anne Marie Tadlock, Appellant,**

v.

**Martell Rae GUILLOT, Appellee.**

No. 14–98–00240–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 15, 1999.

**482**

Katherine D. Mackillop, Houston, for appellants.

Robert G. Lowman, Jr., Houston, for appellees.

Panel consists of Justices AMIDEI, EDELMAN and WITTIG.

## OPINION

DON WITTIG, Justice.

We are presented for the first time with an argument for offset and settlement credit against uninsured motorist coverage

1. Bartley commenced this action on August 31, 1995 under the "comparative responsibility" statutes, which have since been replaced by the current "proportionate responsibility"

by a negligent third party. The dispute arose out of a multi-car accident. Guillot, appellee, originally sued Ward, Bustos (uninsured), and Bartley (insured), appellant. Before trial, Guillot settled with Allstate, her uninsured motorist carrier, for $20,000 for the injuries she sustained in the accident caused by Bustos. The settlement agreement limited Allstate's subrogation rights to any damages recovered from Bustos or any other uninsured motorist. Bustos was dismissed from the case before trial, and Ward nonsuited. Thus, Guillot proceeded against Bartley only and recovered $30,000. Bartley moved the court for a set-off in the amount of $20,000, the amount Guillot received from Allstate. The trial court refused, and Bartley perfected this appeal.

In two points of error, Bartley contends the trial court erred in refusing to apply the settlement as a credit. Specifically, she argues that the comparative responsibility scheme of the Texas Civil Practice and Remedies Code allows a credit and the common law prohibits double recovery. We disagree.

### Comparative Responsibility

In her first point of error, Bartley contends the Civil Practice and Remedies Code mandates she be given a credit. As Bartley correctly points out:

If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to one of the following. As elected in accordance with Section 33.014:

(1) the sum of the dollar amounts of all settlements;

TEX. CIV. PRAC. & REM.CODE ANN. § 33.012(b) (Vernon Supp.1995).[1] However, the code defines a settling person for which a credit

statutes. All references in this opinion to the Texas Practice and Civil Remedies Code are to the statutes in effect on August 31, 1995.

is required as a "person who at the time of submission has paid or promised to pay monetary value to a claimant at any time in consideration of potential liability pursuant to the provisions of Section 33.001...." Tex. Civ. Prac. & Rem.Code Ann. § 33.011(5). Therefore, we must determine if Allstate paid the $20,000 to Guillot in consideration of its potential liability under Section 33.001.

A person is liable under Section 33.001 for an action in *negligence*, products liability grounded in negligence, or strict liability any of which resulted in personal injury, property damage, or death. *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.001. Neither Allstate nor any of its representatives were present the day of the multi-car accident. Allstate's only involvement with this accident arose out of a *contract* it entered into with Guillot. Allstate's payment of $20,000 could not have been in consideration for any potential liability Allstate possibly owed Guillot under Section 33.001, but only as a result of its contract with Guillot. Therefore, Allstate is not a settling person as defined in the comparative responsibility statute, and Bartley is not entitled to any credit for Allstate's payment. Accordingly, we overrule Bartley's first point or error. Additional statutory considerations are discussed below.

### Common Law and Statutory Construction

In Bartley's second point of error, she asserts that the common law prohibits double recovery regarding an uninsured motorist policy. As the Texas Supreme Court recognized in *First Title Co. v. Garrett* a prevailing party is entitled to only "one satisfaction" for an injury. 860 S.W.2d 74, 78 (Tex.1993). "That is, when a plaintiff files suit alleging that *multiple tortfeasors* are responsible for the plaintiff's injury, any settlements are to be credited against the amount for which the liable parties as a whole are found responsible, but for which only the non-settling defendant remains." *Id.* (emphasis added). However, this rule is not absolute. *See Dabney v. Home Ins. Co.,* 643 S.W.2d 386, 389 (Tex.1982) (holding tortfeasors are not entitled to set off payments made pursuant to PIP, personal injury protection, policy).

The issue before this court is whether a negligent driver is entitled to receive credit from an independent insurance policy procured by the injured party. This question likewise is one of first impression in Texas.[2] The insurance company who pays under contract for a loss or injury for the wrong of another is subrogated to the rights of the creditor or injured person against the wrongdoer. *See Finger v. Southern Refrigeration Servs., Inc.,* 881 S.W.2d 890, 894 (Tex.App.— Houston [1st Dist.] 1994, writ denied). The insurer's right to subrogation derives from the rights of the insured. *Id.*

Here, Allstate, the insurer, paid Guillot, the insured, pursuant to Guillot's uninsured motorist policy for the multi-car collision. This entitled Allstate to stand in the shoes of Guillot and assert any claims that Guillot was entitled to assert against the uninsured motorist, Bustos. *See* Tex. Ins.Code Ann. art. 5.06–1(6) (Vernon Supp. 1999); *Simpson v. GEICO General Ins. Co.,* 907 S.W.2d 942, 947 (Tex.App.—Houston [1st Dist] 1995, no writ). The Uninsured Motorist statute is silent regarding Allstate's rights of subrogation against an

---

2. Many jurisdictions have been confronted with this issue. *See International Sales— Rentals Leasing Co. v. Nearhoof,* 263 So.2d 569 (Fla.1972) (no set-off); *Thompson v. Milam,* 115 Ga.App. 396, 154 S.E.2d 721 (1967) (no set-off); *Beaird v. Brown,* 58 Ill.App.3d 18, 15 Ill.Dec. 583, 373 N.E.2d 1055 (1978) (no set-off); *Jones v. Smith,* 1 Kan.App.2d 331, 564 P.2d 574 (1977) (no set-off); *Rattenni v.* *Grainger,* 379 S.E.2d 890 (S.C.1989) (no set-off); *but see Batchelor v. Brye,* 421 So.2d 1267 (Alaska Ct.App.1982) (holding that set-off is required); *Waite v. Godfrey,* 106 Cal.App.3d 760, 163 Cal.Rptr. 881 (1980) (set-off); *Ketterling v. Amercian States Ins. Co.,* 415 N.W.2d 106 (Minn.Ct.App.1987) (set-off); *Cooper v. Aplin;* 523 So.2d 339 (Ala.1988) (set-off).

insured party, such as Bartley in the present case. However, Allstate's settlement contract does address its rights against insured parties and strictly prohibits them by limiting Allstate's subrogation rights to any monies recovered from "Emiliano Bustos or any other uninsured person."

Allstate decided not to exercise its subrogation right by joining Bustos in this suit. Guillot proceeded solely against Bartley and recovered $30,000 for the damages Bartley caused. Thus, Allstate allows Guillot to receive more money than the damages awarded by the jury because it did not attempt to collect from Bustos.[3]

What Bartley really seeks is reimbursement or contribution from Bustos via Allstate's payment to Guillot under her uninsured motorist policy. However, Allstate stands in the shoes of Guillot not the shoe's of the joint tortfeasor. *See Allstate Ins. Co. v. Clarke,* 471 S.W.2d 901, 907 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). Bustos, the uninsured alleged joint tortfeasor, was not a party to this suit. To prevent what has occurred, Bartley could have joined Bustos in a cross action as a third party defendant creating an opportunity for the jury to adjudicate Bustos's liability, if any. This would have allowed Bartley to seek contribution or reimbursement from Bustos for any damages attributable to Bustos. To offset the $30,000 Bartley owed as damages by Allstate's $20,000 settlement, would allow Bartley to receive contribution from the plaintiff and not a codefendant. Allstate's liability arises from the fault, if any, of the uninsured motorist Bustos, not that of the insured driver, Bartley. *See Franco v. Allstate Ins. Co.,* 505 S.W.2d 789, 791–92 (Tex.1974).

Bartley cites two cases for the proposition that double recovery is strictly prohibited and that she is entitled to a set-off for the money already received. *See First Title Co. v. Garrett,* 860 S.W.2d 74, 78 (Tex.1993); *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1 (Tex.1991). In *First Title,* both the title company and the seller made the same misrepresentations that the land was free of restrictive covenants. 860 S.W.2d at 75–76. Although not joined together in one action, the court recognized the seller's settlement agreement covered the same injury for which the title companies were found liable: a parcel of land worth less than it was represented to be worth. *Id.* at 79. The court held that an off-set was proper because the title companies and the sellers caused the same injury and the compensation received in the settlement and in the present lawsuit compensated an indivisible injury. *Id.*

In *Sterling,* the same issue arose in a land transaction involving a misrepresentation by the seller, the title company, and the seller's attorney. 822 S.W.2d at 3. Specifically, all three assured Sterling that certain lots would be included in the transaction. *Id.* at 3. Before the trial, the seller and his attorney settled, and the trial proceeded against the seller. *Id.* at 4. The seller asserted that it was entitled to set-off the amount of the settlement against the damages it owed. *Id.* at 7–8. The court held that the seller was entitled to the set-off because all the defendants were *joint tortfeasors,* and caused the same damage.

Both of these authorities are distinguishable not only because all the above parties involved made tortious misrepresentations, but also because of statutory constraints, *infra.* The torts committed by these joint tortfeasors all resulted in indivisible injuries. Here, unlike *First Title* or *Sterling,* Allstate committed no tort because Allstate was not involved in the accident in any way. Guillot was struck by three

---

**3.** If Allstate had rights of subrogation against insured motorists, which it does not, then the money recovered from Bartley would have allowed Allstate to recover its $20,000 with the remainder being paid to Guillot. A similar situation would have occurred if Bustos had been a party to this suit, the jury had found him liable, and Allstate had exercised its right of subrogation.

individuals, and these three individuals are the joint tortfeasors, not Allstate. Proof is lacking that the damages caused an indivisible injury. We recognize that in *First Title* and *Sterling* the relationship between the title companies were based in part on contract; however, in both cases, the parties made misrepresentations, causing in fact the complained of torts. Allstate's relationship with Guillot is strictly based on their contract. Therefore, any set-off Bartley may be entitled to receive must come from another joint tortfeasor, not Allstate, a party involved merely by contract.

Bartley, as the defendant has the burden of proof to establish she is entitled to settlement credit. *First Title Co. v. Garrett*, 860 S.W.2d at 78–79 (recognizing that record must reflect settlement agreement). This is a multi-car accident with multiple impacts. The only evidence in the record of responsibility was the 100 percent negligence finding against Bartley. Curiously, appellant apparently persuaded the trial court to submit a "sole cause" instruction, presumably representing the conduct of Bustos. The jury found against appellant's argument who now somehow wishes to nevertheless characterize Bustos's conduct as that of a joint tortfeasor. The verdict does not support this. Accordingly, appellant has, in the first instance, failed to meet her burden to show entitlement to common law credit.

■■■■ Even assuming appellant met this threshold requirement by merely introducing the settlement agreement, she cites no authority, statute, contract, or case law allowing an offset in derogation of the express language of the statute. The common law has been dramatically engrafted upon by the legislature. Where the common law is revised by statute, the statute controls. *See Ryan v. Travelers Ins. Co.*, 715 S.W.2d 172, 175 ( Tex.App.—Houston [1 st Dist.] 1986, writ ref'd n.r.e.). Appellant chooses to ignore the express language of the legislature in adopting article 5.06–1of the Texas Insurance Code.

"No automobile liability insurance ... shall be delivered ... unless coverage is provided ... in at least the *limits provided ... for the protection of persons insured thereunder. ...*" Tex. Ins.Code Ann. art. 5.06–1(1) (emphasis added). Bartley (or more likely her insurer) would have us rewrite the statute to provide for the *protection of negligent third parties*. But clearly the Supreme Court has held that uninsured motorists coverage is not public liability insurance. *Cf. Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 327–28 (Tex.1984). Although strictly a statutory construction case, *Members* is instructive on some of the distinctions between liability and uninsured coverages and demonstrates why a statutory hospital lien cannot compromise uninsured coverage. *Id.* Offsets to the mandatory uninsured motorist coverage require authorization by statute or contract. *See James v. Nationwide Property & Cas. Ins.*, 786 S.W.2d 91, 94 (Tex.App.—Houston [14 th Dist.] 1990, no writ) (allowing offset for personal injury protection).

Similarly, the uninsured motorist statute requires coverage in at least the amounts of the Texas Motor Vehicle Safety Responsibility Act. *See* Tex. Ins.Code Ann. art. 5.06–1(1), (3). At the time of the accident, the act required insurance in the amount of $20,000. *See* Tex. Transp. Code Ann. § 601.072 (Vernon 1999). Bartley's insurer's claimed credit would reduce the amount of *uninsured coverage available* for the *protection of the insured* to $10,000. Such a reduction is prohibited by the legislature. *See Hamaker v. American States Ins. Co.*, 493 S.W.2d 893, 898 (Tex. Civ.App.—Houston [1 st Dist.] 1973, writ ref'd n.r.e.). While it may be argued Guillot receives the full $20,000, this begs the question of the source of this money, which by statute, must be the uninsured coverage available. This coverage is not authorized to be diluted.

The statute further provides in pertinent part: "In the event of payment to any person ... the *insurer* making such pay-

**486**

ment shall ... be *entitled to the proceeds of any settlement* ... against any person ... for which such payment is made...." Tex. Ins.Code Ann. art. 5.601(6) (emphasis added). Thus by statute, Allstate, not Bartley, is authorized to a credit.

### Conclusion

By contract, Guillot alone was protected by Allstate. Nothing in the contract states an intention or anticipates third party coverage on this first party insurance agreement. Common law principles notwithstanding, the legislature clearly stated its intent to protect Guillot alone from the effects of an uninsured driver's negligence. What the legislature has granted, the courts may not take away. Similarly, the legislature plainly applied settlement credits to person potentially liable in negligence, not contract. We find that Bartley is not entitled to set-off from Guillot's policy, but is limited to contribution from the other joint tortfeasor as provided by statute. The negligent Bartley may not reap the windfall, benefit, and foresight of Guillot's uninsured motorist policy to reduce her own responsibility.

We affirm the judgment of the trial court.