19141

Azalee SELLERS, Respondent, v. PUBLIC SAVINGS LIFE INS. CO., Appellant.

(178 S. E. (2d) 241)

*Messrs. James A. Stuckey, Jr.* and *Falcon E. Hawkins,* both of *Hollings & Hawkins* of Charleston, *for Appellant,*

*Messrs. Horger & Horger,* of Orangeburg, *for Respondent,*

December 16, 1970.

BUSSEY, Justice.

In this action the respondent, as the beneficiary of a policy issued by appellant on the life of her husband George Sellers, seeks to recover the sum of $750.00, double indemnity or accidental death benefit. There was a verdict of the jury favorable to the respondent and the insurer appeals, asserting several errors, including error in denying its motion for judgment *non obstante veredicto.*

As will hereinafter appear, we are of the view that there was no error in denying appellant's motion for judgment n.o.v. but hold that there was, in the course of the trial, prejudicial error and that the appellant is entitled to a new trial.

It is, of course, elementary that in passing upon whether a directed verdict, or judgment *non obstante veredicto,* should have been granted, the evidence and all of the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the respondent. We proceed to state the facts in the light of these principles, but in view of the fact that a new trial will be ordered, deal with the facts only to the extent necessary to disposition of the appeal. The insured, George Sellers, was 50 years old at the time of his death. He had been married for thirty years; was a hard working, regularly employed man, and in excellent health.

On the night of February 14, 1969, in the vicinity of Eutawville, Sellers was driving a pickup truck which, in bad weather, skidded partially off the left side of the road and into an adjacent canal. The said canal was approximately six feet deep and six feet wide at the top, but narrow at the bottom, being somewhat V-shaped. At the bottom of the canal there was five or six inches of water and underneath mud about knee-deep.

One Julius Preacher Jones was with Sellers at the time but apparently neither sustained any injury as a result of the truck skidding off of the road. Jones proceeded to contact one Joseph White who lived nearby, seeking assistance. Unsuccessful effort was made to get the truck out of the edge of the canal, following which White then took Sellers to his son's home, but Sellers insisted on going back to his truck where White left him at about 1 A.M. On the following morning the coroner of Orangeburg County and a deputy sheriff were called to the location of the truck and upon arrival found Sellers dead, lying face down in the bottom of the canal with his hands extended above his head and his head very nearly totally submerged. The rear end

of the truck was down deep in the canal but with the front end hanging up on the side in a slanting position. The body was to the left of the truck with the feet near the truck and the head toward the opposite side of the canal. The door on the driver's side of the cab, toward the body, was open and the interior of the cab was muddy.

The coronor concluded that Sellers had obviously drowned and as a result of such conclusion no autopsy was performed, no medical opinion solicited, and no inquest held. The body was closely examined at the mortician's by the coroner and it exhibited no external evidence of injury. From his observation of rigor mortis, the coroner estimated the time of death as being somewhere near 3 A. M. No evidence of any kind, indicative of foul play, was found.

Under the terms of the policy the double indemnity benefit was payable if "the Insured accidentally drowns or has sustained bodily injuries effected solely through external, violent and accidental means, * * *." Excluded from coverage was "any loss sustained or contracted in consequence of the Insured being intoxicated or under the influence of any narcotic except when prescribed by a physician * * *."

We think there is no merit in the appellant's contention that it was entitled to a directed verdict or judgment *non obstante veredicto*. Whether in fact the said Sellers drowned as contended by respondent was an issue properly submitted to the jury. Of course, there is no medical evidence as to the cause of death and no eye witness to the death, but the cause of death may, like any other fact, be established by circumstantial evidence. *Glenn v. Dunean Mills,* 242 S. C. 535, 131 S. E. (2d) 696. We have not heretofore apparently had occasion to consider the sufficiency of circumstantial evidence offered to prove that a particular death was an accidental drowning. Several other courts have, however, had opportunity to consider such. See the annotation "Death by Accidental Means", 12 A.L.R. (2d) 1312, Sec. 32.—"Death From Drowning". In the

case of *Sturm v. Employers' Liability Assur. Corp.*, (1918) 212 Ill. App. 354, the Court said:

"Where a man, a few minutes after being seen apparently in good health, is found under water, dead, and nothing more is known of the cause of death, the immediate conclusion arrived at is that he was drowned. As the result of common sense and common experience, that opinion is formed by the normal processes of almost instant reason, and it may be said that legally such circumstantial evidence makes out a *prima facie* case of accidental drowning."

In *Sturm* the insured died in the bathtub of his home and the issue was whether he accidentally drowned or died of disease. The court held that the circumstantial evidence tending to prove accidental drowning was sufficient to create a jury issue despite the medical testimony to the effect that death was due to a disease.

The *Sturm* decision has been subsquently followed and applied by the Appellate Court of Illinois in *Dietz v. Metropolitan Life Ins. Co.*, (1940) 305 Ill. App. 507, 27 N. E. (2d) 540, and *Kanne v. Metropolitan Life Ins. Co.*, (1941) 310 Ill. App. 524, 34 N. E. (2d) 732. In the case of *Metropolitan Life Ins. Co. v. Neikirk* (1938), 175 Md. 163, 200 A. 370, the circumstantial evidence was held sufficient to require submission to the jury of the question whether or not the insured died as a result of accidental drowning. In *Buckley v. Massachusetts Bonding & Ins. Co.*, (1920) 113 Wash. 13, 192 P. 924, the circumstantial evidence was held sufficient to justify a recovery on the theory of death by accidental drowning.

The witness Joseph White was asked whether in his opinion Sellers was "highly intoxicated" when White left him at his truck. The trial judge refused to permit the question to be answered and we agree with appellant that he was in error in so refusing. It is well settled that a lay witness may testify whether or not, in his opinion, a person was drunk or sober on a given occasion when ob-

served by the witness, and that the weight of such testimony is for the jury. *State v. Stockman,* 82 S. C. 388, 64 S. E. 595 (1909); *State v. Ramey,* (1952) 221 S. C. 10, 68 S. E. (2d) 634. The appellant pled as a defense that the insured was intoxicated or under the influence of a narcotic at the time of his death, and it is obvious, we think, that the error in excluding the opinion of the witness as to intoxication, was prejudicial.

Preacher Jones who was with Sellers at the time the truck skidded off the road and who, with White, was the last to see him alive, was not called as a witness by either party. Neither party offered any explanation as to why he was not called. What contact, if any, appellant had with Jones does not appear in the record, except that White testified, on cross-examination, that he thought an agent of the appellant, who had taken a statement from him, had also talked with Jones.

Counsel for respondent argued to the jury that adverse inferences were to be drawn from the failure of the appellant to call Jones as a witness and, while his charge was not too clear, the trial judge in effect charged the jury that it might infer from the failure of the appellant to call Jones that his testimony would have been adverse or unfavorable to appellant had he been called. In this His Honor was clearly in error. The circumstances and conditions under which the failure or refusal of a party to produce evidence, or a witness, may create an adverse inference are dealt with at some length in *Davis v. Sparks,* 235 S. C. 326, 111 S. E. (2d) 545. See also cases collected in West's South Carolina Digest, Evidence, Key No. 77. We find not the slightest basis in the record in the instant case to warrant the charge. As far as the record shows, the witness was quite as available to the respondent as he was to the appellant. Jones was neither an agent, employee, relation nor associate of the appellant and there is nothing whatever to suggest that the appellant had any degree of control over him. Since Jones was accompanying Sellers in Sellers' truck

on the night of Sellers' death, it would appear that if Jones were beholden to anyone in this case, it would have been Sellers.

The trial judge submitted to the jury, over the objection of the appellant, only two questions, one of which was as follows:

"Was the death of George Sellers the result of an accident?"

The appellant argues that this question was misleading to the jury; that in effect the judge rewrote the policy provisions, and that the form of the questions could have led the jury to think that since Sellers "was in an "accident" earlier that night by skidding his truck into the ditch and his death followed, albeit indirectly that he was entitled to double indemnity benefits." We regard it as at least possible, if not probable, that the jury may have been misled by this. Upon a retrial any special questions submitted to the jury should be more nearly in conformity with the policy language and the issues adduced by the evidence.

For the reasons hereinabove set forth, the judgment of the lower court is reversed and the case remanded for a new trial.

Reversed and remanded.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.