609 S.E.2d 506

**Vergie W. FIELDS, individually and as the personal representative of Thomas Edison Fields, deceased, Respondent,**

v.

**REGIONAL MEDICAL CENTER ORANGEBURG South Carolina and F. Simons Hane, M.D., Defendants,**

**Of whom F. Simons Hane, M.D. is Petitioner.**

No. 25939.

Supreme Court of South Carolina.

Heard Jan. 6, 2005.

Decided Feb. 14, 2005.

Rehearing Denied March 16, 2005.

20

Andrew F. Lindemann, of Davidson, Morrison and Lindemann, P.A., of Columbia, and Julius W. McKay, II, of McKay, McKay, Settana & Addison, of Columbia, for Petitioner.

J. Marvin Mullis, Jr., of Mullis Law Firm, of Columbia, for Respondent.

Justice BURNETT:

We granted the petition for a writ of certiorari to review the Court of Appeals' opinion in *Fields v. Regional Medical Center Orangeburg,* 354 S.C. 445, 581 S.E.2d 489 (Ct.App. 2003). We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Vergie Fields (Plaintiff) brought this wrongful death action against Physician and Regional Medical Center Orangeburg (RMC), alleging negligence and medical malpractice in failing to diagnose a heart condition suffered by her husband, Thomas Edison Fields (Decedent), and admit him to RMC. The Court of Appeals reversed the jury verdict for Physician and RMC and granted Plaintiff a new trial.[1]

Plaintiff took Decedent, age 49, to RMC's emergency room when he began suffering chest pain which radiated into both arms on the afternoon of September 14, 1994. Decedent was examined, his history and past records were reviewed, he was placed on a heart monitor, and an electrocardiogram (EKG) test of his heart revealed no abnormalities. Decedent suffered from previously diagnosed conditions of chronic back pain, caused by a 1976 employment-related injury which left him totally disabled, and a hiatal hernia and gastrointestinal reflux. Decedent was given medication to relieve pain, told to follow up with his physician and sent home.

Plaintiff again took Decedent to RMC's emergency room at about 3 a.m. on September 18, 1994, after he awoke with severe chest pain radiating into both arms. Physician, who

---

1. RMC is not a party on appeal.

was on duty in the emergency room, testified he examined Decedent and reviewed past records which showed Decedent's history as a smoker, complaints of chest pain in past years, and past hospital admissions for mental health issues. Physician reviewed previous EKG and heart test results, including a heart catheterization in 1993 and the visit four days earlier, none of which revealed any heart condition.

Physician testified he placed Decedent on a heart monitor and performed an EKG which showed no abnormalities. Decedent stated his chest pain was similar to past instances, but worse. He was crying and upset. Physician gave Decedent the same pain medications he had received previously for the hiatal hernia and reflux, conditions which also may cause chest pain. Physician diagnosed Decedent with histrionics [2] and chronic pain, told him to follow up with his doctor, and discharged him at 3:50 a.m. Physician denied his diagnosis was substantially affected by an emergency room nurse who told him Decedent, her uncle, was "crazy" and possibly seeking drugs, but instead was based primarily on Decedent's medical history, the current exam and normal EKG test.

Plaintiff testified Decedent's chest pains worsened after leaving RMC and she drove her husband to a Columbia hospital. There, Decedent suffered a documented heart attack about an hour after leaving RMC. Decedent was transferred to another Columbia hospital the same day, where he underwent an emergency heart catheterization. Decedent died after his right coronary artery was dissected during the operation, which is a known risk of the procedure. An autopsy revealed Decedent suffered from severe coronary artery disease.

Plaintiff alleged that, had Physician properly diagnosed Decedent with potential coronary artery disease and realized a heart attack might be imminent, Decedent would have been admitted to RMC, probably would have been given thrombolytic ("clot-busting") medications when he suffered his heart attack, and would not have undergone the emergency proce-

---

2. Plaintiff's expert defined histrionics as "[a]n unofficial term sometimes used by doctors referring to a behavioral pattern of an individual when it is loud, crying, disorganized, that to an average individual appears to be not appropriate to the situation on hand."

dure which resulted in his death. Plaintiff presented evidence, including the testimony of two expert witnesses, of Physician's medical malpractice in failing to have Decedent examined by a heart specialist and admitted to RMC; in failing to adequately investigate and consider Decedent's medical and family history and past episodes of similar chest pain; in failing to perform additional tests and monitoring; and in concluding Decedent was simply hysterical or exaggerating his symptoms.

Physician contended his examination and treatment of Decedent met the requisite standard of care. Physician and his expert in emergency medicine testified Physician adequately reviewed Decedent's medical history, which included several instances in which Decedent had complained of chest pain and undergone heart-related tests which did not reveal any heart disease or impairment. Physician presented evidence Decedent had suffered from a variety of physical and psychiatric ailments and made numerous trips to RMC's emergency room. Physician also presented the testimony of Decedent's regular physician, his psychiatrist, and the cardiologist who performed the 1993 heart catheterization which revealed no significant abnormalities.

## ISSUES

I. Did the Court of Appeals err in denying Physician's motion to dismiss Plaintiff's appeal as untimely?

II. Did the Court of Appeals err in reversing the jury's verdict based on the trial court's exclusion of testimony regarding the qualifications of Plaintiff's expert witness?

III. Did the Court of Appeals err in reversing the jury's verdict based on the trial court's refusal to allow Plaintiff to use a medical treatise to cross-examine Physician?

## STANDARD OF REVIEW

Qualification of an expert and the admission or exclusion of his testimony is a matter within the sound discretion of the trial court. Similarly, the admission or exclusion of evidence in general is within the sound discretion of the trial court. In both instances, the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Pike v.*

*S.C. Dept. of Transp.,* 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000); *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997); *Means v. Gates,* 348 S.C. 161, 166, 558 S.E.2d 921, 923 (Ct.App.2001). An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support. *Carlyle v. Tuomey Hosp.,* 305 S.C. 187, 193, 407 S.E.2d 630, 633 (1991); *Fontaine v. Peitz,* 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987). A trial court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion when the ruling is manifestly arbitrary, unreasonable, or unfair. *Means,* 348 S.C. at 166, 558 S.E.2d at 924.

 To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof. *Hanahan v. Simpson,* 326 S.C. 140, 156, 485 S.E.2d 903, 911 (1997); *Timmons v. S.C. Tricentennial Commn.,* 254 S.C. 378, 405, 175 S.E.2d 805, 819 (1970); *Powers v. Temple,* 250 S.C. 149, 160, 156 S.E.2d 759, 764 (1967).

## LAW AND ANALYSIS

### I. MOTION TO DISMISS APPEAL

 Physician contends the Court of Appeals lacked jurisdiction to consider Plaintiff's appeal because Plaintiff failed to timely serve the notice of appeal on the opposing parties. We disagree.

At the end of the trial on March 30, 2000, Plaintiff requested ten days to file a new trial motion, as provided in Rule 59(b), SCRCP. The trial judge denied the request, stating he would prefer to consider any motions immediately while the case and issues were still fresh in his mind. Plaintiff then asserted, in a one-sentence statement, that the trial court's previous evidentiary rulings constituted reversible error. The trial judge denied the oral motion.

Seven days later, Plaintiff filed a written motion for a new trial, citing Rule 59, SCRCP. Plaintiff asserted that, *inter alia,* the trial judge erred in excluding testimony about her

expert witness's qualifications on the ground of hearsay, and in refusing to allow Plaintiff to use a medical treatise to cross-examine Physician on the ground the treatise had not been listed by Plaintiff in discovery responses. The trial judge denied Plaintiff's post-trial motion July 14, 2000, after a hearing. Plaintiff filed and served a notice of appeal August 8, 2000.

Physician filed a motion to dismiss the appeal for lack of jurisdiction after the Court of Appeals issued an opinion reversing the jury's verdict. The Court of Appeals denied the motion.

Physician contends, as he did to the Court of Appeals, that the trial judge denied Plaintiff's request to file a written new trial motion. Thus, Plaintiff's written new trial motion, which followed the oral new trial motion made at the end of the trial, was an improper successive motion akin to those condemned in *Quality Trailer Products, Inc. v. CSL Equipment Co.*, 349 S.C. 216, 562 S.E.2d 615 (2002) and *Collins Music Co. v. IGT*, 353 S.C. 559, 579 S.E.2d 524 (Ct.App.2002). Physician further contends the written motion cannot be viewed as a Rule 59(e) motion for reconsideration because it raised issues not previously ruled upon by the trial court. Physician argues the improper successive motion did not toll the time to appeal, making Plaintiff's notice of appeal untimely and depriving the appellate court of jurisdiction. *See Mears v. Mears*, 287 S.C. 168, 337 S.E.2d 206 (1985); Rule 203(b)(1), SCACR.

We conclude Plaintiff's written motion is properly viewed as a motion for reconsideration under Rule 59(e), SCRCP to the extent it addressed the trial court's evidentiary rulings which Plaintiff challenged in her briefly stated oral motion at the end of the trial. *See e.g. C.A.H. v. L.H.*, 315 S.C. 389, 392, 434 S.E.2d 268, 270 (1993) (party may not use Rule 59(e) to present to the court an issue the party could have raised prior to judgment, but did not). It is proper to treat Plaintiff's written motion as a Rule 59(e) motion even though it was erroneously captioned as a motion for new trial. *See Mickle v. Blackmon*, 255 S.C. 136, 140, 177 S.E.2d 548, 549 (1970) (treating motion based on its substance and effect as opposed to how it was captioned by party); *Richland County v. Kaiser*, 351 S.C. 89, 94, 567 S.E.2d 260, 262 (Ct.App.2002) (illustrating

that when court is able to discern the relief requested, "[i]t is the substance of the requested relief that matters regardless of the form in which the request for relief was framed"); *Standard Fed. Sav. & Loan Assn. v. Mungo*, 306 S.C. 22, 26, 410 S.E.2d 18, 20 (Ct.App.1991) (explaining that civil procedure rules must be construed to secure the just, speedy, and inexpensive determination of every action, and defects which do not affect the substantial rights of the parties should be disregarded; thus, it is the substance of the relief sought that matters regardless of the form in which the request for relief was framed).

Moreover, we recently clarified the limits and rationale of *Quality Trailer* and *Collins Music* in *Elam v. South Carolina Department of Transportation*, 361 S.C. 9, 602 S.E.2d 772 (2004). We explained that an appeal may be barred due to untimely service of the notice of appeal when a party—instead of serving a notice of appeal—simply recaptions a written motion for judgment notwithstanding the verdict (JNOV) or new trial, which has been ruled on, and resubmits it as a virtually identical, written Rule 59(e) motion. *Elam*, 361 S.C. at 20, 602 S.E.2d at 778; *Quality Trailer*, 349 S.C. 216, 562 S.E.2d 615 (presenting case in which appeal was barred as untimely where appellant filed written JNOV/new trial motion, which was ruled on, and then filed a virtually identical, written Rule 59(e) motion); *Collins Music*, 353 S.C. 559, 579 S.E.2d 524 (same).

However, in *Elam* we held that

a party usually is free to file an initial Rule 59(e) motion, regardless of whether the previous JNOV/new trial motions were made orally or in writing, without unnecessary concern the repetition of an issue or argument made in a previous motion will result in a subsequent appeal being dismissed as untimely. In essence, we view the use of oral or written JNOV/new trial motions, followed by an initial Rule 59(e) motion, as part and parcel of a party's "single bite at the apple" in presenting his case to the trial court. Again, we caution a party who files post-trial motions to note carefully the exceptions to this general rule as expressed in *Coward Hund*,[3] *Quality Trailer* and *Collins Music*.

---

**3.** The case of *Coward Hund Constr. Co. v. Ball Corp.*, 336 S.C. 1, 518 S.E.2d 56 (Ct.App.1999), addressed the issue of successive motions for

*Elam,* 361 S.C. at 21, 602 S.E.2d at 778. Accordingly, Plaintiff timely filed a Rule 59(e) motion, which was denied, and Plaintiff then timely served and filed her notice of appeal. The Court of Appeals had jurisdiction in this case and correctly denied Physician's motion to dismiss the appeal.

## II. EXCLUSION OF TESTIMONY ABOUT EXPERT'S QUALIFICATIONS

Physician argues the Court of Appeals erred in reversing the jury's verdict and remanding for a new trial because the trial court excluded part of the explanation of Plaintiff's expert for not being board-certified in emergency medicine. We agree.

Physician's expert witness in emergency medicine, Dr. Robert Bartlett, testified a physician may seek board certification in emergency medicine after eight years of training. A physician must pass a written and oral examination, and is recertified every ten years.

The expert witnesses of both parties were routinely asked if they were board-certified in emergency medicine or another specialty. Physician's witness, Bartlett, testified he was board-certified in emergency medicine. One of Plaintiff's expert witnesses, Dr. Alfred Frankel, also testified he was board-certified in emergency medicine. Physician testified he was board-certified in family medicine; but had failed the emergency medicine exam for board certification by one point.

Plaintiff presented Dr. George Podgorny as an expert in emergency medicine. Podgorny testified by video deposition that he had practiced emergency medicine for more than twenty-five years. In explaining why he was not board-certified in the specialty, Podgorny testified, "The reason is that I was the first president of the board of emergency medicine and was instrumental in development of the examination, and then served for many years as the editor of both the written and the oral exam."

The trial court sustained Physician's objection to the remainder of Podgorny's explanation on the ground it was inadmissible hearsay. The jury did not hear this statement:

reconsideration under Rule 59(e), SCRCP, an issue not raised in this appeal.

"And the opinion of legal counsel was that there may be a conflict of interest if I will take the exam, which it was perceived that I knowed (sic) all the answers."

In closing arguments, Plaintiff's counsel mentioned the board certification of the expert witnesses. He noted Podgorny was not board certified "because he's the one that writes the test that they use" and described Podgorny as "the guru in this part of the country on emergency rooms." Physician's counsel, in closing, emphasized Bartlett's qualifications as a "true expert" who "knows what he's talking about. Dr. Podgorny; what evidence is there that Dr. Podgorny writes the test? Ridiculous! Dr. Podgorny never took the test to be board certified."

The Court of Appeals held Plaintiff demonstrated both error and resulting prejudice in the trial court's exclusion of a portion of Podgorny's explanation. The Court of Appeals stated

[u]sually, if opinion testimony is offered by a physician or surgeon, his competency to testify as an expert is sufficiently established by the fact that he has been duly licensed to practice medicine or surgery. *State v. Moorer*, 241 S.C. 487, 129 S.E.2d 330 (1963), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991); *Hill v. Carolina Power Light Co.*, 204 S.C. 83, 28 S.E.2d 545 (1943). A physician or surgeon is not incompetent to testify as an expert merely because he is not a specialist in the particular branch of his profession involved in the case. *Creed v. City of Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993). The fact that the physician is not a specialist in the particular area affects only the weight of the witness's testimony and affords no basis for completely rejecting it. *Hill*, 204 S.C. at 109, 28 S.E.2d at 555; *Brown v. LaFrance Indus.*, 286 S.C. 319, 333 S.E.2d 348 (Ct.App.1985) . . . .

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Proof of a statement introduced to show a party heard and acted upon information is not objectionable hearsay. *Webb v. Elrod*, 308 S.C. 445, 449, 418 S.E.2d 559, 562 (Ct.App.1992); 31A C.J.S. *Evidence* 259 (1996) ("[T]esti-

mony is not hearsay where it relates to what the witness himself did in reliance on, or in response to, a statement, facts upon which action was taken, personal observations, explanation of conduct, the effect of statements on the listener, the fact that something was said, or identifying what was said.").

Podgorny's statement is a classic example of showing an action based upon information and is not offered for the truth of the matter asserted. The statement was not offered to prove that the counsel was correct in showing that there would be a conflict of interest if Podgorny took the test, but rather explained why Podgorny did not take the test and therefore, was not board-certified.

*Fields,* 354 S.C. at 452–54, 581 S.E.2d at 492–93. The Court of Appeals further concluded Plaintiff was prejudiced by the error because the case presented the "paradigmatic example of clashing experts and debatable qualifications" in a close case in which the experts' credentials were crucial. *Id.* at 454–55, 581 S.E.2d at 494.

■ We conclude the Court of Appeals correctly found error in the trial court's ruling, and the trial court abused its discretion in excluding the "legal counsel" testimony. The testimony was not hearsay because it was not admitted to prove the truth of the matter asserted.

■ However, the Court of Appeals erred in concluding Plaintiff has shown prejudice. When evidence is erroneously excluded by the trial court, the appellate court usually engages in the following analysis to determine whether prejudice has occurred. First, the court considers, *inter alia,* whether the error may be deemed harmless because equivalent or cumulative evidence or testimony was offered;[4] the aggrieved party still managed to accomplish his primary objective, such

4. *E.g. Recco Tape Label Co. v. Barfield,* 312 S.C. 214, 217, 439 S.E.2d 838, 840 (1994) (any error in exclusion of co-defendant's financial statements was harmless, given that such evidence would have been cumulative to testimony that co-defendant reduced the corporation's value through the substantial use of business funds for personal expenditures); *Smith v. Winningham,* 252 S.C. 462, 467, 166 S.E.2d 825, 827 (1969) ("Alleged error in the exclusion of offered testimony is of no avail if the same testimony or testimony to the same effect had been or was afterwards allowed to be given by the witness."); *Lowie v. Dixie Stores,* 172 S.C. 468, 174 S.E. 394 (1934) (exclusion of evidence is not

as eliciting testimony about an issue or effectively cross-examining a witness;[5] the jury's verdict or a proper court ruling rendered the wrongly excluded evidence moot because it was relevant to an issue that did not have to be reached;[6] the aggrieved party failed to establish a claim or defense even when both the admitted and excluded evidence are considered;[7] or the wrongly excluded evidence involved a generally known fact.[8]

 Second, the appellate court considers whether, viewing a case as a whole, the wrongly excluded evidence or

prejudicial when the evidence is supplied by another witness); *S.C. Dept. of Highways Public Transp. v. Galbreath*, 315 S.C. 82, 86, 431 S.E.2d 625, 628 (Ct.App.1993) ("[e]ven if the trial court erred in excluding evidence, there is no reversible error where the testimony would have been cumulative"); *Patterson v. I.H. Servs., Inc.*, 295 S.C. 300, 308, 368 S.E.2d 215, 220 (Ct.App.1988) (even if it were error to exclude testimony of employee regarding telephone call to employer, its exclusion was harmless because the evidence was cumulative to testimony later given by employer about the call).

5. *E.g. Goudelock v. Prudential Ins. Co. of America*, 219 S.C. 284, 294, 65 S.E.2d 114, 118 (1951) (any error in exclusion of letter showing the plaintiff's salary scale did not prejudice defendant because plaintiff during cross-examination testified to substantially what the letter contained); *Young v. Hudsex Motor Co.*, 172 S.C. 541, 174 S.E. 489 (1934) (in action for fraud in sale of automobile, trial court's refusal to allow witness to testify about resale price of automobile was not prejudicial error because plaintiff was afterwards permitted to fully examine president of defendant company about the issue).

6. *E.g. First State Sav. and Loan v. Phelps*, 299 S.C. 441, 449, 385 S.E.2d 821, 826 (1989) (any error in exclusion of defendant's proferred testimony on damages was harmless because defendant failed to establish counterclaim that plaintiff bank committed either a fraud or breached an express oral warranty in sale of horses).

7. *E.g. Triple "F," Inc. v. Gerrard*, 298 S.C. 44, 378 S.E.2d 67 (Ct.App. 1989) (even if trial court wrongly excluded extension agent's testimony that university had not endorsed feed program for area dairy farmers, the error was harmless because only testimony on record did not establish feed suppliers' claim that feed program marketer had committed fraud).

8. *E.g. Coffee v. Anderson County*, 224 S.C. 477, 488, 80 S.E.2d 51, 56 (1954) (any error in not allowing county engineer to testify about number of miles of improved roads in county was harmless because jurors had general knowledge about size of county and extent of road system).

testimony was so crucial and important in proving the aggrieved party's claim or defense that its exclusion constitutes prejudicial error, i.e., the aggrieved party demonstrates there is a reasonable probability the jury's verdict was influenced by the lack of the challenged evidence.[9]

It certainly is true that the credentials of both parties' expert witnesses were crucial in the present case. Both parties medical experts were routinely asked whether they were board-certified. Both parties' mentioned the experts' board certification in closing arguments while praising their own expert and criticizing their opponent's.

Plaintiff did not present evidence that was equivalent or cumulative to the wrongly excluded "legal counsel" testimony. Plaintiff did, however, accomplish her primary objective in demonstrating Podgorny was well-qualified to render an opinion on Physician's actions. Podgorny testified he had practiced emergency medicine for more than twenty-five years and had helped edit the board certification test for years. In addition, Plaintiff's other expert, Frankel, was board-certified in emergency medicine.

Viewing the case as a whole, we are not persuaded the "legal counsel" testimony was so crucial and important in proving Plaintiff's malpractice claim that its exclusion constitutes prejudicial error. Plaintiff has not shown a reasonable

---

9. *E.g. Elledge v. Richland/Lexington School Dist. Five*, 352 S.C. 179, 185–89, 573 S.E.2d 789, 792–95 (2002) (finding prejudicial error in the exclusion of industry safety standards for playground equipment because such standards would have helped establish the necessary standard of care, would have provided important support and enhancement of opinion testimony of expert witnesses, and would not have been cumulative to experts testimony); *Senn v. J.S. Weeks Co.*, 255 S.C. 585, 591, 180 S.E.2d 336, 338 (1971) (in action for injuries allegedly resulting from defendant's truck being parked illegally in manner that obscured stop sign and caused motorist to proceed through intersection without stopping, it was prejudicial error to exclude photographs showing stop sign with truck parked substantially as described by witnesses because the photographs were relevant to a basic and vital issue in the case the motorist's view of stop sign); *Sellers v. Public Sav. Life Ins. Co.*, 255 S.C. 251, 256, 178 S.E.2d 241, 243 (1970) (finding prejudicial error where witness was not allowed to offer his lay opinion on whether decedent was intoxicated, where life insurance policy prohibited payment of double indemnity benefit for accidental death if the insured was intoxicated or under influence of illegal narcotic).

probability the jury was influenced by the absence of a portion of Podgorny's explanation regarding his lack of board certification. This case differs, for example, from the *Elledge*; *Senn*, or *Sellers* cases described in footnote 9, where the aggrieved party was prejudiced by the wrongful exclusion of crucial and important evidence.

In short, both parties presented experienced, well-qualified experts who offered opposing opinions about the propriety of Physician's actions. Whether Physician's actions met the requisite standard of care was a question for the jury and the jury decided it in favor of Physician. Accordingly, we affirm the Court of Appeals' finding of error in the trial courts ruling, but reverse the finding of prejudice.

## III. USE OF MEDICAL TREATISE TO CROSS–EXAMINE PHYSICIAN

Physician contends the Court of Appeals erred in reversing the jury's verdict and remanding for a new trial because the trial court refused to allow Plaintiff to use a medical treatise during cross-examination of Physician. Although this issue presents a closer question than Issue II, we agree.

Plaintiff attempted to use an emergency medicine textbook written by Tintinalli, Krome, and Ruiz while cross-examining Physician. Physician testified he was familiar with the treatise, considered an authoritative source by emergency room doctors. Physician's counsel objected to use of the treatise because Plaintiff had failed to list it in her responses to Physician's discovery requests.

Plaintiff's counsel stated he intended to use the treatise to "ask [Physician] if what he's testified to is different from what's in the text." Counsel did not proffer any specific questions or information from the textbook. The trial court sustained the objection and instructed the jury to disregard all references to the treatise. In an affidavit which accompanied Plaintiff's written motion for a new trial, Plaintiff's paralegal testified Physician's counsel, apparently realizing Plaintiff's counsel had seen the treatise on defense counsel's table while cross-examining Physician, instructed an assistant to put it away. The assistant placed the treatise on the floor and covered it up with several notebooks.

The Court of Appeals, relying on Rule 37(b), SCRCP, held the trial court abused its discretion by disallowing use of the treatise without weighing the nature of the interrogatories, the discovery posture of the case, the willfulness of the offending party, and the degree of prejudice to the objecting party. The Court of Appeals held Plaintiff had been prejudiced by the error. *Fields*, 354 S.C. at 455–59, 581 S.E.2d at 494–96.

■■■ We conclude the Court of Appeals correctly held the trial court abused its discretion in preventing Plaintiff from using the treatise to challenge Physician's assertion that his examination and treatment of Decedent was appropriate. There was no evidence Plaintiff willfully failed to disclose the treatise, and Physician was not prejudiced or surprised by the use of an admittedly authoritative treatise lying on defense counsel's table. Disallowing use of the treatise for a discovery violation under these facts did not further the primary purpose of the civil procedural rules at issue, i.e., preventing or limiting ambush tactics at trial.

■■■ However, the Court of Appeals erred in concluding Plaintiff has demonstrated prejudice under the analysis set forth in Issue II. Plaintiff has failed to explain persuasively at trial or on appeal how she would have used the treatise to challenge Physician's testimony. The treatise evidence likely would have been cumulative to the testimony of Plaintiff's two experts, who testified Physician failed to perform additional tests and monitoring of Decedent's condition. Viewing the case as a whole, Plaintiff has not shown the treatise was so crucial and important that its wrongful exclusion constitutes prejudicial error. Plaintiff has failed to establish a reasonable probability the jury was influenced by the lack of cross-examination of Physician with information from the medical treatise.

As explained in Issue II, both parties presented experienced, well-qualified experts who offered opposing opinions about the propriety of Physician's actions. Whether Physician's actions met the requisite standard of care was a question for the jury and the jury decided it in favor of Physician.

## CONCLUSION

We affirm the Court of Appeals' denial of Physician's motion to dismiss the appeal. On Issues II and III, we affirm the Court of Appeals' findings of error in the trial court's evidentiary rulings, but reverse the findings of prejudice. Accordingly, we affirm the jury's verdict in favor of Physician.

### AFFIRMED IN PART; REVERSED IN PART

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.