773 S.E.2d 607

**DEEP KEEL, LLC, Respondent,**

v.

**ATLANTIC PRIVATE EQUITY GROUP, LLC, Terry L. Rohlfing, Jerry T. Caldwell, and Bluffton Village Town Center Property Owners' Association, Inc., Defendants,**

**Of Whom Atlantic Private Equity Group, LLC, Terry L. Rohlfing, and Jerry T. Caldwell are the Appellants.**

**Appellate Case No. 2013–002281.**
**No. 5320.**

Court of Appeals of South Carolina.

Heard April 16, 2015.
Decided June 17, 2015.

Keating L. Simons, III, Simons & Dean, of Charleston, for appellants.

Charles S. Altman and Meredith L. Coker, Altman & Coker, LLC, both of Charleston, for respondent.

FEW, C.J.

Atlantic Private Equity Group, LLC defaulted on a promissory note personally guaranteed by Terry L. Rohlfing and Jerry T. Caldwell. The master-in-equity ordered foreclosure of the mortgage securing the note and entered a deficiency judgment against Atlantic. On appeal, Atlantic challenges the master's admission of evidence on authentication and hearsay grounds. We affirm the judgment of foreclosure because we find the loan documents upon which the judgment was based were properly admitted into evidence. However, we reverse the deficiency judgment because the testimony of the amount remaining due on the note was hearsay. In addition, we vacate the master's finding that Rohlfing and Caldwell were liable on the guaranties because the finding was outside the

scope of the order of reference. We remand for further proceedings.

## I. Facts and Procedural History

On March 27, 2008, Atlantic executed a promissory note to Community First Bank for a commercial loan in the amount of $2,000,000. The note was secured by a mortgage on two parcels of real estate in Beaufort County. Rohlfing and Caldwell executed personal guaranties to ensure payment of the note. When Atlantic defaulted, Community First brought a foreclosure action against Atlantic and breach of guaranty claims against Rohlfing and Caldwell. It sought deficiency judgments against all three. While the action was pending, Community First merged with Crescent Bank and became known as CresCom Bank, which later assigned the loan to the respondent, Deep Keel, LLC.

Atlantic, Rohlfing, and Caldwell filed a joint answer in which they admitted Community First made a loan to Atlantic, the loan was secured by a mortgage, and "not all monthly payments have been timely made." However, they denied Deep Keel was entitled to foreclosure or a deficiency judgment.

The circuit court referred the case to the master "for the purposes of adjudicating the foreclosure action." The order of reference provided that upon resolution "of the foreclosure action, this case is to be returned to the Circuit Court for final hearing and disposition as to any issues triable by jury against [Rohlfing and Caldwell]." At the beginning of the foreclosure hearing, the master acknowledged Deep Keel's breach of guaranty claims against Rohlfing and Caldwell "would be heard in a separate action."

To support its claim for foreclosure, Deep Keel offered into evidence six documents (the "loan documents") through its sole member—Scott Bynum—to establish the existence and terms of the loan. Atlantic objected, arguing the loan documents were inadmissible because (1) Deep Keel failed to authenticate them and (2) they contained hearsay to which no exception applied. The master overruled the objections and admitted the loan documents.

Deep Keel attempted to establish the amount remaining due on the loan through Bynum's testimony. The testimony was based on documentation Bynum received from CresCom Bank at the time the loan was assigned, but Deep Keel did not offer those documents into evidence. Atlantic objected on hearsay grounds, and the master overruled its objection.

The master ordered foreclosure of the mortgage, found there was $1,655,027 remaining due on the note, and granted Deep Keel a deficiency judgment against Atlantic.[1] Although the master returned the case to the circuit court as the order of reference directed, the foreclosure order included a finding that Rohlfing and Caldwell "executed and delivered ... personal Guaranties" and were "liable for a limited principal amount of $350,000."

## II. Admission of Loan Documents

Atlantic disputes the admissibility of the loan documents, which include (1) a promissory note; (2) a mortgage; (3) an assignment of leases, rents, and profits;[2] (4) a loan modification agreement dated April 2009; (5) a loan modification agreement dated May 2010; and (6) a partial release of mortgage and assignment of leases, rents, and profits. Atlantic argues Deep Keel failed to properly authenticate these loan documents, and they contained inadmissible hearsay. We address these two arguments separately.

### A. Authentication

A party offering evidence must meet "[t]he requirement of authentication ... as a condition precedent to admissibility." Rule 901(a), SCRE. The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* "[T]he burden to authenticate ... is not high" and requires only that the proponent "offer[ ] a satisfactory foundation from which the jury could reasonably find that the evidence is authentic."

---

1. Deep Keel bought the property at public auction for $900,000. The master found that after applying the proceeds of the sale to the debt, Atlantic's remaining liability on the note was $755,027 plus interest.

2. This assignment of leases "grants a security interest ... in and to [revenue] from the property [secured by the mortgage]."

*United States v. Hassan*, 742 F.3d 104, 133 (4th Cir.2014) (decided under Fed.R.Evid. 901(a)[3]); *see also* 29A Am. Jur. 2d *Evidence* § 1045 (2008) ("The authentication requirement does not demand that the proponent of ... evidence conclusively demonstrate [its] genuineness....").

■ We find Deep Keel offered evidence sufficient to authenticate the loan documents. First, Bynum's testimony complied with Rule 901(b)(1), SCRE, which provides that evidence may be authenticated by a witness with knowledge who testifies that an item "is what it is claimed to be." Bynum testified he agreed to purchase a note from CresCom Bank, he examined the loan documents while negotiating the agreement, and the loan documents offered in evidence were the ones he examined and later received pursuant to this transaction. This testimony authenticated the loan documents because it was sufficient to support a finding that they were the documents Deep Keel claimed them to be—the note, mortgage, and assignment of leases executed by Atlantic in 2008 when it borrowed the money from Community First; the two loan modification agreements "modify[ing] the original note"; and a partial release of the security interests granted through the mortgage and assignment of leases. *See* Rule 901(a).

Atlantic argues, however, Bynum was not a witness with knowledge under Rule 901(b)(1) because he did not know "when, how, or by whom the documents were prepared, how they came to be in the possession of CresCom Bank, or how they were maintained by that bank." The authentication requirement does not demand this degree of proof. *See Hassan*, 742 F.3d at 133. Bynum's testimony demonstrated he had personal knowledge that the loan documents admitted into evidence were the same ones CresCom Bank provided to him when Deep Keel purchased the asset the loan documents represent—the 2008 note, as modified, with security interests.

---

**3.** When South Carolina adopted the Rules of Evidence in 1995, Rule 901(a) was "identical to the federal rule." Rule 901, SCRE, note. The federal rule was amended in 2011 with changes that were "stylistic only" and not "inten[ded] to change any result in any ruling on evidence admissibility." *See* Fed.R.Evid. 901 advisory committee's note to the 2011 amendment.

This is sufficient evidence to meet the Rule 901(a) requirement of authentication.

Second, Deep Keel authenticated the loan documents under Rule 901(b)(4), SCRE, which provides that evidence may be authenticated based on "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." The note the master admitted into evidence (1) names Atlantic as the "Borrower"/"Mortgagor" and Community First as the "Lender," (2) states $2,000,000 as the amount of the loan, (3) provides the date of execution—March 27, 2008, and (4) recites a specific "loan number" of 145003387. The mortgage—which was recorded in the public record [4]—contains the same information, including the loan number. The specific and distinctive information on the face of the note, considered in connection with the mortgage, is sufficient to support a finding that the note was the one Atlantic executed in 2008. *See Kershaw Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 302 S.C. 390, 398, 396 S.E.2d 369, 373–74 (1990) (finding admission proper under "the principle articulated in Fed. R. Evidence 901(b)(4)" where "[a]n examination of the[ ] documents establishes that [they] relate to the same subject, are internally consistent, [and] often refer to or answer each other"); [5] 59A C.J.S. *Mortgages* § 991 (2009) (stating when promissory notes "correspond on their face with those recited in the mortgage, no further proof of their execution [or] their identity is required until defendant presents countervailing evidence"); 59A C.J.S. *Mortgages* § 987 (2009) (stating a note "is admissible when sufficiently identified as the one recited or referred to in the mortgage" (footnote omitted)). The remaining loan documents each refer to the note and mortgage and, importantly, (1) name Atlantic

---

4. *See* Rule 901(b)(7), SCRE (providing an item may be authenticated with "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept").

5. *Kershaw* was decided before we adopted the Rules of Evidence. *See* Rule 1103(b), SCRE ("These rules shall become effective September 3, 1995."). However, the adoption of the Rules did not change prior law regarding this principle of authentication. *See* Rule 901, SCRE, note (stating "[s]ubsection (b)(4) is consistent with prior law," and citing *Kershaw* for support).

and Community First as the parties to the transaction, (2) state the same principal amount of the loan—$2,000,000, (3) specifically reference the date March 27, 2008, and (4) recite the same loan number found on the note and mortgage. These facts are sufficient to support a finding that the loan documents were the documents Deep Keel claimed them to be. *See* Rule 901(a).

 Third, we find the first five loan documents—excluding the partial release—are self-authenticating under Rule 902(9), SCRE, which provides, "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to ... [c]ommercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law." The note is commercial paper, and the other four loan documents are either commercial paper themselves or "documents relating thereto."[6] *Id.* Each of the five documents bears the signature of Terry L. Rohlfing.

 The "general commercial law" of South Carolina includes our Uniform Commercial Code, *see* S.C.Code Ann. § 36–1–101(a) (Supp.2014), which provides, "In an action with respect to an instrument, the authenticity of ... each signature on the instrument is admitted unless specifically denied in the pleadings," S.C.Code Ann. § 36–3–308(a) (Supp.2014). The note Rohlfing signed on behalf of Atlantic is an "instrument,"[7] and thus, this is "an action with respect to an instru-

---

6. A note is commercial paper. *See* S.C.Code Ann. tit. 36, Commercial Code, Background and Introduction at 7 (2003) (stating "commercial paper" is "the Code term for ... notes"); *Black's Law Dictionary* 1285 (10th ed.2014) (defining "commercial paper" as "[a]n instrument ... for the payment of money," such as "a note"). The loan modification agreements are also commercial paper because they "modify the original note," and the mortgage and assignment of leases, rents, and profits are "documents relating thereto" because they represent security interests to secure repayment of the note.

7. " 'Instrument' means a negotiable instrument," S.C.Code Ann. § 36–3–104(b) (Supp.2014), and " 'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order," S.C.Code Ann. § 36–3–104(a) (Supp.2014). "[A] promissory note secured by a real estate mortgage" is "a negotiable instrument." *Swindler v. Swindler*, 355 S.C. 245, 247, 250, 584 S.E.2d 438, 439, 440

ment." Deep Keel alleged in its complaint that "Atlantic, . . . by and through . . . Rohlfing, executed and delivered to Community First Bank Note # 0145003387 . . . in the amount of $2,000,000" and "a mortgage" on "March 27, 2008." In response to these allegations, Atlantic "admit[ted] . . . that [Community First] made a loan to Defendant Atlantic." Atlantic did not specifically deny anything in response to these allegations. Atlantic also made no specific denial to similar allegations as to the other loan documents. We find Atlantic admitted the authenticity of Rohlfing's signature on the first five loan documents pursuant to subsection 36–3–308(a).

Atlantic points out, however, that in its answer it "[made] reference to the original loan documents and den[ied] any allegations of these paragraphs inconsistent therewith." Atlantic argues this denial was sufficient to contest the authenticity of Rohlfing's signature on the note. We disagree and find Atlantic's answer did not "specifically den[y]" the validity of the signatures, § 36–3–308(a), and was too general to challenge the authenticity of the first five loan documents. *See* 29A Am. Jur. 2d *Evidence* § 1200 (2009) ("Authentication of notes . . . is sufficient . . . where the Uniform Commercial Code . . . provides that each signature on an instrument is admitted unless specifically denied in the pleadings." (footnote omitted)); *see also Nat'l Equip., Ltd. v. David Jones Sales, Trucking Div., Inc.*, 268 S.C. 551, 555, 235 S.E.2d 125, 126–27 (1977) (finding appellant's answer "raises no question as to the genuineness of her signature" because she "neither alleged forgery nor specifically denied her signature"); *Conran v. Yager*, 263 S.C. 417, 419, 421, 211 S.E.2d 228, 229, 230 (1975) (finding appellant "plead a general denial" and "concede[d] the existence of the note" and thus "raised no question as to the genuineness of his signature [on the note], [and] the respondent's production of the note . . . entitled him to 'recover on it' ").[8] Additionally, we point out Atlantic offered no evidence at the hearing and did not argue Rohlfing's signature on the note was invalid.

(Ct.App.2003). Therefore, the note is an "instrument" for purposes of subsection 36–3–308(a).

8. For the continued validity of *National Equipment* and *Conran* after the adoption of the Rules of Evidence, see footnote 5.

*See United States v. Vidacak,* 553 F.3d 344, 351 (4th Cir. 2009) (finding exhibits properly admitted where the appellant "offered no basis for inferring that the exhibits were forged or altered that would arouse this Court's suspicion as to their authenticity").

The admission of evidence is within the discretion of the trial court. *Fields v. Reg'l Med. Ctr. Orangeburg,* 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005). We find the master acted within his discretion in admitting the loan documents because Deep Keel presented evidence—Bynum's testimony, the loan documents themselves, and the mortgage—sufficient to support a finding that the loan documents were the documents Deep Keel claimed them to be, and thus sufficient evidence to meet the requirement of authentication. *See* Rule 901(a).

## B. Hearsay

 Atlantic also argues the loan documents should have been excluded because they were hearsay. *See* Rule 801(c), SCRE (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). "The rule against hearsay prohibits the admission of evidence of an out-of-court statement to prove the truth of the matter asserted unless an exception to the rule applies." *Fowler v. Nationwide Mut. Fire Ins. Co.,* 410 S.C. 403, 411, 764 S.E.2d 249, 253 (Ct.App.2014); *see also* Rule 802, SCRE ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute."). However, "[a] statement that is not offered to prove the truth of the matter asserted should not be excluded as hearsay." *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct.App.2000).

 The master relied on the business records exception to the hearsay rule to admit the loan documents. *See* Rule 803(6), SCRE; S.C.Code Ann. § 19–5–510 (2014). However, the master's reliance on a hearsay exception was unnecessary because the loan documents were not hearsay in the first place. The loan documents form the basis of Deep Keel's claim that Community First loaned Atlantic money in exchange for an obligation to pay it back and a security interest

in the real estate. Thus, the loan documents were offered to establish the existence of a contract and the terms of that contract. Written contracts "offered in court not for the truth of any facts stated in [them] but to prove the existence of a contractual right or duty" should not be excluded as hearsay. 31A C.J.S. *Evidence* § 462 (2008); *see also Kepner–Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir.1994) ("Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are non[-]hearsay."); *Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 559, 658 S.E.2d 80, 87 (2008) (recognizing that "words of contract" are non-hearsay when they are not "offered for the truth of the matter asserted" and "form[ ] part of an issue" being litigated). We find the loan documents were properly admitted to show the existence of an agreement to loan money, the terms of repayment, and the existence of a security interest in the real estate. Because the loan documents were not offered to prove the truth of any statement, they were not hearsay and the master correctly admitted them.

### III. Admission of Testimony Regarding Amount Remaining Due

In contrast to Deep Keel's thorough presentation of documents to prove the existence of its agreement with Atlantic and the terms of repayment, Deep Keel offered no documentation of the amount remaining due on the loan. The only evidence Deep Keel offered of the amount due was Bynum's testimony. Atlantic objected to this testimony on the basis of hearsay, but the master admitted it pursuant to the business records exception. Atlantic contends Bynum's testimony should have been excluded because it was hearsay to which no exception applied.[9]

#### A. Hearsay

■ We first consider whether Bynum's testimony concerning the amount due on the note was hearsay. At the hearing, Bynum testified he reviewed "all the documents related to the

---

**9.** Because no actual records were offered in evidence to prove the amount, there is no authentication issue.

amounts due and the payments that were made on the loan at the time [Deep Keel] purchased it." He further testified these documents contained "a calculation . . . regarding what the balances are today." He was then asked to testify to the current principal balance due on the note. Atlantic objected on the basis that Bynum's testimony regarding the principal balance "is based upon his review of bank records," which were hearsay. The master allowed Bynum to testify that the remaining balance of the original principal was $1,532,238.

Bynum then explained how that figure was calculated. He testified that by the time Deep Keel acquired the loan, which was originally for $2,000,000, the principal had been reduced due to payments made by Atlantic, rent received from tenants, and proceeds from the sale of one of the properties securing the loan. He explained the current balance was calculated from "loan agreements" and "accounting records" that "show what payments were made, when they were made, [and] how much interest accrued." He then testified that with the addition of interest on the principal and several other costs, the total amount remaining due was $1,655,027.

We find Bynum's testimony was hearsay. Bynum had no personal knowledge of any transactions with Atlantic before he purchased the note. His testimony demonstrates his knowledge was based exclusively on documents that show payments and interest charges. By testifying to a conclusion based only on statements he read in documents, Bynum necessarily testified to the truth of those statements. His testimony, therefore, was offered to prove the truth of the statements and was hearsay.

### B. Business Records Exception

The master relied on the business records exception to admit Bynum's testimony. According to Rule 803(6), the following is not excluded by the rule against hearsay:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum,

report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness. . . .

*See also* § 19–5–510 ("A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."); *Ex parte Dep't of Health & Envtl. Control*, 350 S.C. 243, 249–50, 565 S.E.2d 293, 297 (2002) (explaining business records are admissible under Rule 803(6) and section 19–5–510 "as long[ ] as they are (1) prepared near the time of the event recorded; (2) prepared by someone with or from information transmitted by a person with knowledge; (3) prepared in the regular course of business; (4) identified by a qualified witness who can testify regarding the mode of preparation of the record; and (5) found to be trustworthy by the court").

 Atlantic first asserts the business records exception does not apply in this case because no records were actually offered in evidence. Bynum's testimony demonstrates he reviewed bank records that showed the principal balance and total amount due on the note, but these records were never offered in evidence at the hearing. The plain language of Rule 803(6) allows for the admission of "[a] memorandum, report, record, or data compilation," not testimony describing such a document. We hold Rule 803(6) does not apply to admit live testimony offered to prove the contents of a record containing hearsay when that record is not offered in evidence. *See Thompson v. State*, 705 So.2d 1046, 1048 (Fla.Dist.Ct.App. 1998) ("While the business-records exception to the hearsay rule allows the admission of '[a] memorandum, report, record, or data compilation,' it does not authorize hearsay *testimony* concerning the contents of business records which have not been admitted into evidence." (citation omitted)); *State v. Watkins*, 148 Idaho 418, 224 P.3d 485, 492 (2009) (finding written notes relied on by the witness "were not offered into evidence" and "[i]n the absence of any document ... there was simply no 'business record' that might fall within this hearsay exception"); *Bass v. Washington Kinney Co.*, 119

Ill.App.3d 713, 75 Ill.Dec. 295, 457 N.E.2d 85, 96 (1983) ("[I]t is only the business record itself which is admissible, and not the testimony of a witness who makes reference to the record.").[10]

Deep Keel argues Bynum was a "qualified witness" under Rule 803(6) and section 19–5–510 and thus should have been permitted to testify to the calculations he made from the information contained in the records. Deep Keel relies on *Twelfth RMA Partners, L.P. v. National Safe Corp.*, 335 S.C. 635, 518 S.E.2d 44 (Ct.App.1999), in which this court held a witness is qualified to testify about a business record, despite the fact he or she did not personally participate in the creation of the record and was not the custodian "at or near the time" the record was made. 335 S.C. at 642, 518 S.E.2d at 48. We held a person is a "qualified witness" under the rule if the testimony conveys information from a person "with knowledge" at the time the records were created. *Id.*[11] In this case, Bynum appears to be a "qualified witness" under *Twelfth RMA* because he studied the manner in which Community First and CresCom Bank maintained the records before he purchased the note. Thus, his testimony conveyed information from a person with knowledge at the time the records were created. 335 S.C. at 642, 518 S.E.2d at 48.

However, establishing that a witness is qualified to testify about a business record does not automatically lead to admission of that record. The qualified witness must then lay the foundation to meet the requirements of Rule 803(6) and section 19–5–510. *See State v. Davis*, 371 S.C. 170, 178–79, 638 S.E.2d 57, 62 (2006) (stating the proponent of evidence has the

---

10. Deep Keel's argument that Bynum's live testimony could be admitted under the business records exception would require Bynum to testify to the content of the records. This is prohibited by the "Requirement of Original" in Rule 1002, SCRE, which provides, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."

11. *See also Midfirst Bank, SSB v. C.W. Haynes & Co.*, 893 F.Supp. 1304, 1310 (D.S.C.1994), *aff'd sub nom. C.W. Haynes & Co. v. Midfirst Bank, SSB*, 87 F.3d 1308 (4th Cir.1996) ("Business records of an entity are admissible even though another entity made the records, and the rule does not require an employee of the entity that prepared the record to lay the foundation.").

burden of establishing that a record falls within a hearsay exception). There are numerous elements to the foundation for a business record to which Bynum did not testify in this case. *See Ex parte Dep't of Health & Envtl. Control*, 350 S.C. at 249–50, 565 S.E.2d at 297 (listing the elements of the business records exception).

Because the business records exception applies only to the admission of business records themselves, the exception does not apply to Bynum's hearsay testimony. Deep Keel did not argue, and we do not find, any other hearsay exception applies. Thus, we find the master abused his discretion in admitting the evidence.

## C. Prejudice

We must next determine whether Atlantic was prejudiced by the admission of the evidence. *See Fields*, 363 S.C. at 26, 609 S.E.2d at 509 (stating to warrant reversal, the appellant must prove the evidentiary ruling was erroneous and resulted in prejudice). Without Bynum's hearsay testimony concerning the unpaid balance, Deep Keel could not prove the amount remaining due on the debt, and the master had no basis for calculating the amount of the deficiency. We find the error prejudiced Atlantic.

## IV. Findings Related to Liability of Guarantors

Rohlfing and Caldwell argue the master erred by finding they executed and delivered personal guaranties to Community First and were liable on the guaranties because those issues were outside the scope of the order of reference. Specifically, they contend this court should vacate the master's finding 18, which states:

> On or about March 27, 2008, [Rohlfing] and [Caldwell] executed and delivered to [Community First] Bank personal Guaranties to individually guaranty the Note and debt of [Atlantic]. The said unsecured Guaranties make [them] liable for a limited principal amount of $350,000.00.

We first consider whether this issue is preserved for our review because Rohlfing and Caldwell did not argue in their Rule 59(e), SCRCP, motion that the master erred in including finding 18 in his order. We find the issue preserved. A

master's authority to determine issues referred to him by the circuit court is a question of subject matter jurisdiction, which "may be raised at any time, including on appeal." *Normandy Corp. v. S.C. Dep't of Transp.*, 386 S.C. 393, 403, 688 S.E.2d 136, 141 (Ct.App.2009). *Cf.* 386 S.C. at 402–04, 688 S.E.2d at 141–42 (finding the master had subject matter jurisdiction to rule on a particular issue because the order of reference "did not limit the issues to be addressed by the master"). Thus, we address the merits of Rohlfing and Caldwell's argument.

"Pursuant to Rule 53, SCRCP, a master has no power or authority except that which is given to him by the order of reference." *Bunkum v. Manor Props.*, 321 S.C. 95, 98, 467 S.E.2d 758, 760 (Ct.App.1996). "When a case is referred to a master, Rule 53(c) gives the master the power to conduct hearings in the same manner as the circuit court, unless the order of reference specifies or limits his powers." *Smith Cos. of Greenville, Inc. v. Hayes,* 311 S.C. 358, 360, 428 S.E.2d 900, 902 (Ct.App.1993). The circuit court referred the case to the master "for the purposes of adjudicating the foreclosure action." The order of reference specifically provided that "upon a resolution or disposition of the foreclosure action, this case is to be returned to the Circuit Court for final hearing and disposition as to any issues triable by jury against" Rohlfing and Caldwell. The order did not authorize the master to decide any issues regarding Rohlfing's and Caldwell's liability on the guaranties; it specifically restricted the master from doing so. Because finding 18 exceeded the scope of the order of reference,[12] we vacate the finding.

## V. Conclusion

We find the master acted within his discretion in admitting the loan documents because they were properly authenticated and were not hearsay. However, we find Bynum's testimony

---

12. We decide only the narrow issue raised by Rohlfing and Caldwell— whether the master exceeded the scope of the order of reference—and do not address their entitlement to a jury trial on the breach of guaranty claims. *See Carolina First Bank v. BADD, L.L.C.,* Op. No. 27486 (S.C. Sup. Ct. filed Jan. 28, 2015) (Shearouse Adv. Sh. No. 4 at 21, 25), *reh'g granted* (Apr. 9, 2015) (stating "a party does not have a right to a jury trial when he is included in the action solely for the purpose of obtaining a deficiency judgment").

regarding the amount due on the note was hearsay to which no exception applied, and thus, the master erred in admitting his testimony on that issue. Finally, we find the master acted outside the scope of the order of reference by making a finding bearing on the liability of Rohlfing and Caldwell, and we vacate this finding.

We **AFFIRM** the judgment of foreclosure, **REVERSE** the deficiency judgment entered against Atlantic, **REMAND** to the circuit court for further proceedings necessary for final judgment on all claims, and **VACATE** finding 18.

HUFF and WILLIAMS, JJ., concur.